

# ENGAGEMENT AGREEMENT

**AGREEMENT**, dated as of April 26, 2011 between:

(i)  **Autohaus Acquisition Inc.**
**Bankruptcy Case No: 1:09-07158-RNO**
**c/o Lawrence Frank, Trustee**
**Thomas, Long, Niesen & Kennard**
**212 Locust Street**
**Suite 500**
**Harrisburg, PA 17101**
**Via email: lawrencefrank@earthlink.net**
("*Client*");

And

(ii)  **A. GIBBS & ASSOCIATES, P.C.**
**1060 FIRST AVE, STE 400**
**KING OF PRUSSIA, PA 19406**
**AGIBBS@GIBBSMANAGEMENT.COM**
("Advisor").

Advisor is willing to be retained by the Client and the Client is willing to retain Advisor under the terms and conditions hereinafter set forth. The parties hereto accordingly agree as follows:

1.  SERVICES. Advisor shall perform the services described in **Exhibit A** to this Agreement (the "*Scope of Work*").

2.  FEES AND EXPENSES. The Client agrees to pay to Advisor a fee payable at an hourly rate of $250.00, in connection with the performance of the services described in Exhibit A. The Client also will reimburse Advisor for all reasonable costs and expenses incurred by Advisor in the performance of its services, including without limitation, costs and expenses of subcontractors and counsel, if any, engaged by Advisor. Expenses will be billed monthly. Advisor shall obtain the Client's prior written approval for any expense expected to exceed US $500 or for any counsel. Any fees for additional work and all expenses after the initial phase identified in Exhibit A will be billed at Advisor's standard rates on a monthly basis. The Client agrees to pay to Advisor any balance due shown in any such invoice within 30 days of receipt of such invoice.

1



3. INDEPENDENT CONTRACTOR. It is understood and agreed that Advisor is an independent contractor and that Advisor shall perform the services to be performed under this Agreement under the general direction of the Client. Advisor shall have no power or authority to act for, represent or bind the Client or any person, firm or company affiliated with the Client in any matter.

4. ADDITIONAL WORK. If Advisor or any of Advisor's personnel at any time are asked or compelled to perform work in any capacity which arises out of or relates to the subject matter of Advisor's engagement with the Client (whether in connection with any audit, action, legal proceeding, investigation or otherwise and whether at the request of the Client or by legal process or otherwise), the Client will pay to Advisor an amount equal to the compensation Advisor would have received had such activities constituted services rendered under this Agreement and will also reimburse Advisor for all reasonable expenses, including reasonable counsel fees and other expenses incurred by Advisor, by reason of having been involved in any such activity. The foregoing rights are in furtherance and in addition to, and not in substitution for, the obligations of indemnification provided for below.

5. RELATED AGREEMENTS. The following agreements (if any) are being entered into concurrent herewith as part of the engagement contemplated by this Agreement (said agreements being the *"Related Agreements"*, each of which is hereby incorporated by reference and deemed to be an integral part of this Agreement):

None

6. CONFIDENTIALITY.

(a) Each party understands and agrees that, in the course of performance of the Scope of Work herein contemplated, each party (directly or through its representatives, the *"Disclosing Party"*) may furnish to the other party (the *"Receiving Party"*) confidential or proprietary information (irrespective of the form of communication and in whatever form maintained, whether documentary, computerized or otherwise) (*"Confidential Information"*). As used herein, the term Confidential Information does not include any such information (i) which was publicly available or (ii) which becomes publicly available or otherwise becomes available to the Receiving Party without known violation of confidence to the Disclosing Party, on or prior to the relevant date of determination hereunder.

(b) Each party confirms to and agrees with the other party that the Confidential Information will be used solely for the purpose of the Scope of Work and that it will not knowingly disclose to any third party any such Confidential Information provided to it by the other party, and will take all reasonable steps to restrict access to such information in a manner designed to maintain the confidential nature of such information. The Receiving Party may disclose the Confidential Information to third parties with the prior written consent of the Disclosing Party, provided that such third



parties agree to keep the Confidential Information confidential to the extent as described herein.

(c)  It is understood that the foregoing shall not prohibit the disclosure by either party of information to the extent that (i) such information ceases to be Confidential Information or (ii) such disclosure is required pursuant to legal process or otherwise by law; *provided*, that in any such event described in clause (ii) above, the party so required to disclose will use its best efforts, consistent with applicable legal restraints, to provide to the other party prompt notice of such required disclosure.

(d)  Both parties acknowledge and agree that, except as otherwise stated in the Scope of Work or as otherwise disclosed to and consented by the other party in writing, the services performed by, and work product prepared by, Advisor are being provided on a confidential basis and solely for internal use by the Client for the specific purposes so expressly identified by the Client. The Client may disclose any work product produced under this Agreement to its third party Advisors (including, but not limited to, its accountants, attorneys, financial Advisors, etc.) or its regulators.

(e)  On termination of this Agreement, Advisor shall upon written request promptly return any Confidential Information in Advisor's possession.

7. INDEMNITY.

(a)  Expenses. The Client agrees to reimburse Advisor, its affiliates and their respective directors, officers, employees, agents and controlling persons (each an **"*Indemnified Party*"**) promptly upon demand for expenses (including reasonable fees and expenses of legal counsel) as they are incurred in connection with the investigation of, preparation for or conduct of any pending or threatened claim, or any litigation, proceeding or other action in respect thereof arising directly or indirectly from, or otherwise relating to, the engagement of Advisor under this Agreement or any of the services performed or information delivered in connection with such engagement. Advisor shall inform the Client of any claim, litigation or any other proceeding immediately and the Client shall have the right to participate in any such claim, litigation or proceeding to the extent it is not subject to conflicts of interest that would preclude it from doing so.

(b)  Losses. The Client also agrees in connection with the foregoing to indemnify and hold harmless each Indemnified Party from and against any and all losses, claims, damages and liabilities, joint or several (collectively, **"*Losses*"**), to which any Indemnified Party may become subject, including any amount paid in settlement of any litigation or other action (commenced or threatened), to which the Client shall have consented in writing (such consent not to be unreasonably withheld), whether or not any Indemnified Party is a party and whether or not liability resulted; provided, however, that the Client shall not be liable in respect of any Losses to the extent that a court having



competent jurisdiction shall have determined by final judgment (not subject to further appeal) that such Losses resulted primarily and directly from the willful malfeasance or gross negligence of such Indemnified Party.

(c) <u>Limitation</u>. No Indemnified Party shall have any liability to the Client or any other Indemnified Party in connection with the services rendered pursuant to this Agreement or otherwise to the Client except for liability for Losses (excluding special or consequential damages) determined by final judgment (not subject to further appeal) to have resulted primarily and directly from the willful malfeasance or gross negligence of such Indemnified Party.

(d) <u>Right to Retain Counsel</u>. An Indemnified Party shall have the right to retain separate legal counsel of its own choice to conduct the representation and all related matters in connection with any such litigation, proceeding or other action. The Client shall pay the reasonable fees and expenses of such counsel and such counsel shall to the fullest extent consistent with its professional responsibilities cooperate with the Client and any legal counsel designated by the Client.

8. <u>MISCELLANEOUS</u>. This Agreement and the Related Agreements (if any) constitute the sole agreements between the parties relating to the services described above and supersede all prior oral and written agreements and representations. This Agreement and the Related Agreements (if any): (i) may not be modified except in writing signed by the parties; (ii) shall be governed by and construed in accordance with the laws of the Commonwealth of PA (unless otherwise expressly provided); and (iii) shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. If any portion of this Agreement or any Related Agreement is deemed to be unenforceable, the balance shall nevertheless continue in effect and any court may enforce any provision to the extent permitted by law, even though the entire provision may not be enforced. This Agreement may be executed in any number of counterparts and by any combination of the parties hereto in separate counterparts, each of which counterparts shall be an original and all of which taken together shall constitute one and the same agreement.

9. <u>TERM OF ENGAGEMENT</u>. Advisor's engagement hereunder may be terminated by either party at any time, with or without cause, upon written notice to the other party, without liability or continuing obligation except for the following (each of which shall survive termination of such engagement for a term not to exceed 10 years or such shorter period as may be specified): (i) payment by the Client to Advisor of fees and expenses incurred through the date of such termination, (ii) the continuing obligations of the Client under Sections 4, 6 and 7 hereof and (iii) the continuing obligations of Advisor and the Client in the Related Agreements (if any) if and to the extent therein explicitly provided to survive termination.



IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the dates written below:

| | |
|---|---|
| **Lawrence Frank, Trustee**<br>**Autohaus Acquisition, Inc.** | A. GIBBS & ASSOCIATES, P.C. |
| BY: */signature/* | BY: */signature/* |
| PRINT: _____ | PRINT:   Andrew S. Gibbs |
| TITLE: _____ | TITLE:   PRESIDENT |
| DATE: _____ | DATE: _____ |



# *Exhibit A*

## Scope of Work

This will confirm that you have engaged us to consult with you in connection with potential insurance claims involving Autohaus Acquisition, Inc., Universal Underwriters Insurance Company and Zurich Insurance.

The terms of the engagement are as follows:

1. Although the specific scope of our services may be modified or refined during the course of the proceedings, you generally intend to seek our analysis and advice regarding actions or purported acts involving any claims under insurance policies available to the debtor, Autohaus Acquisition, Inc., including but not limited to: employee dishonesty, forgery, theft and embezzlement claims available for recourse.

2. All work under this engagement, including any reports, data, notes, work papers, correspondence or other documents we may generate or receive are to be considered confidential work product. All such documents and any information they contain that is not publicly available data may be used only for purposes of this engagement and may not be disclosed to anyone without our written consent in advance. In fact, the very existence of our engagement must be kept confidential and may not be disclosed by you without our written consent. Additionally, in order to review various documents and other materials produced in this action, it may be necessary for you to sign an Affidavit confirming your authorization of our firm to proceed in this matter.

3. In recognition of the confidential nature of this engagement, you agree not to discuss our work with anyone else and to notify us promptly if you receive; (a) Any request to reveal information related to the engagement or to examine, inspect or copy any documents we generate or receive; or (b) Any actual or attempted service of a subpoena, summons or order purporting to require the disclosure of any such information or documents.

4. It is understood that until this matter is resolved (including any appeals), you will not retain or request anyone else regarding the subject matter of this engagement without our written consent in advance.

5. We will be working under the exclusive direction of Lawrence Frank, Trustee.

6. Our initial analysis shall be provided in the form of a draft written report to the Trustee, and shall identify documents, exhibits and factual data and the related insurance coverage, policies and provisions available for recovery. Our fee for this engagement largely depends on the current condition of the books and records of the debtor. Our engagement is also dependent on the assistance of the Trustee and Nicholas J. Reinhart to locate various documents. Our fee is contingent upon the condition of the books and records and availability of documents reviewed by us under our prior engagement letter dated September 29, 2009. Our initial engagement will not include correspondence with the insurance companies, interaction with professionals or claims adjusters retained or employed by the insurance companies nor any expert testimony all of which will be billed hourly.

7. In the event client requests services that are beyond the scope of this engagement, Advisor will notify Client in writing that a separate engagement letter is required and prepare such engagement letter.



**IN WITNESS WHEREOF**, this Exhibit A to the Engagement Agreement has been executed for and on behalf of the undersigned as of April 26, 2011.

| **CLIENT** | **Advisor** |
|---|---|
| AUTOHAUS ACQUISITION, INC. | A. GIBBS & ASSOCIATES, P.C. |

By: _____

By: Andrew S. Gibbs

Name:
Title:

Name:
Title:

Please acknowledge that you accept these terms by signing the enclosed copy of this agreement above and returning it to us.



# ENGAGEMENT AGREEMENT

**AGREEMENT**, dated as of April 26, 2011 between:

    (i)    Autohaus Acquisition Inc.
            Bankruptcy Case No: 1:09-07158-RNO
            c/o Lawrence Frank, Trustee
            Thomas, Long, Niesen & Kennard
            212 Locust Street
            Suite 500
            Harrisburg, PA 17101
            Via email: lawrencefrank@earthlink.net
                            ("*Client*");

And
    (ii)   A. GIBBS & ASSOCIATES, P.C.
            1060 FIRST AVE, STE 400
            KING OF PRUSSIA, PA 19406
            AGIBBS@GIBBSMANAGEMENT.COM
                          ("Advisor").

Advisor is willing to be retained by the Client and the Client is willing to retain Advisor under the terms and conditions hereinafter set forth. The parties hereto accordingly agree as follows:

    1.    SERVICES. Advisor shall perform the services described in **Exhibit A** to this Agreement (the "*Scope of Work*").

    2.    FEES AND EXPENSES. The Client agrees to pay to Advisor a fee payable at an hourly rate of $250.00, in connection with the performance of the services described in Exhibit A. The Client also will reimburse Advisor for all reasonable costs and expenses incurred by Advisor in the performance of its services, including without limitation, costs and expenses of subcontractors and counsel, if any, engaged by Advisor. Expenses will be billed monthly. Advisor shall obtain the Client's prior written approval for any expense expected to exceed US $500 or for any counsel. Any fees for additional work and all expenses after the initial phase identified in Exhibit A will be billed at Advisor's standard rates on a monthly basis. The Client agrees to pay to Advisor any balance due shown in any such invoice within 30 days of receipt of such invoice.

1



3. INDEPENDENT CONTRACTOR. It is understood and agreed that Advisor is an independent contractor and that Advisor shall perform the services to be performed under this Agreement under the general direction of the Client. Advisor shall have no power or authority to act for, represent or bind the Client or any person, firm or company affiliated with the Client in any matter.

4. ADDITIONAL WORK. If Advisor or any of Advisor's personnel at any time are asked or compelled to perform work in any capacity which arises out of or relates to the subject matter of Advisor's engagement with the Client (whether in connection with any audit, action, legal proceeding, investigation or otherwise and whether at the request of the Client or by legal process or otherwise), the Client will pay to Advisor an amount equal to the compensation Advisor would have received had such activities constituted services rendered under this Agreement and will also reimburse Advisor for all reasonable expenses, including reasonable counsel fees and other expenses incurred by Advisor, by reason of having been involved in any such activity. The foregoing rights are in furtherance and in addition to, and not in substitution for, the obligations of indemnification provided for below.

5. RELATED AGREEMENTS. The following agreements (if any) are being entered into concurrent herewith as part of the engagement contemplated by this Agreement (said agreements being the *"Related Agreements"*, each of which is hereby incorporated by reference and deemed to be an integral part of this Agreement):

None

6. CONFIDENTIALITY.

(a) Each party understands and agrees that, in the course of performance of the Scope of Work herein contemplated, each party (directly or through its representatives, the *"Disclosing Party"*) may furnish to the other party (the *"Receiving Party"*) confidential or proprietary information (irrespective of the form of communication and in whatever form maintained, whether documentary, computerized or otherwise) (*"Confidential Information"*). As used herein, the term Confidential Information does not include any such information (i) which was publicly available or (ii) which becomes publicly available or otherwise becomes available to the Receiving Party without known violation of confidence to the Disclosing Party, on or prior to the relevant date of determination hereunder.

(b) Each party confirms to and agrees with the other party that the Confidential Information will be used solely for the purpose of the Scope of Work and that it will not knowingly disclose to any third party any such Confidential Information provided to it by the other party, and will take all reasonable steps to restrict access to such information in a manner designed to maintain the confidential nature of such information. The Receiving Party may disclose the Confidential Information to third parties with the prior written consent of the Disclosing Party, provided that such third



parties agree to keep the Confidential Information confidential to the extent as described herein.

(c) It is understood that the foregoing shall not prohibit the disclosure by either party of information to the extent that (i) such information ceases to be Confidential Information or (ii) such disclosure is required pursuant to legal process or otherwise by law; *provided*, that in any such event described in clause (ii) above, the party so required to disclose will use its best efforts, consistent with applicable legal restraints, to provide to the other party prompt notice of such required disclosure.

(d) Both parties acknowledge and agree that, except as otherwise stated in the Scope of Work or as otherwise disclosed to and consented by the other party in writing, the services performed by, and work product prepared by, Advisor are being provided on a confidential basis and solely for internal use by the Client for the specific purposes so expressly identified by the Client. The Client may disclose any work product produced under this Agreement to its third party Advisors (including, but not limited to, its accountants, attorneys, financial Advisors, etc.) or its regulators.

(e) On termination of this Agreement, Advisor shall upon written request promptly return any Confidential Information in Advisor's possession.

7. INDEMNITY.

(a) Expenses. The Client agrees to reimburse Advisor, its affiliates and their respective directors, officers, employees, agents and controlling persons (each an **"Indemnified Party"**) promptly upon demand for expenses (including reasonable fees and expenses of legal counsel) as they are incurred in connection with the investigation of, preparation for or conduct of any pending or threatened claim, or any litigation, proceeding or other action in respect thereof arising directly or indirectly from, or otherwise relating to, the engagement of Advisor under this Agreement or any of the services performed or information delivered in connection with such engagement. Advisor shall inform the Client of any claim, litigation or any other proceeding immediately and the Client shall have the right to participate in any such claim, litigation or proceeding to the extent it is not subject to conflicts of interest that would preclude it from doing so.

(b) Losses. The Client also agrees in connection with the foregoing to indemnify and hold harmless each Indemnified Party from and against any and all losses, claims, damages and liabilities, joint or several (collectively, **"Losses"**), to which any Indemnified Party may become subject, including any amount paid in settlement of any litigation or other action (commenced or threatened), to which the Client shall have consented in writing (such consent not to be unreasonably withheld), whether or not any Indemnified Party is a party and whether or not liability resulted; provided, however, that the Client shall not be liable in respect of any Losses to the extent that a court having



competent jurisdiction shall have determined by final judgment (not subject to further appeal) that such Losses resulted primarily and directly from the willful malfeasance or gross negligence of such Indemnified Party.

(c) <u>Limitation</u>. No Indemnified Party shall have any liability to the Client or any other Indemnified Party in connection with the services rendered pursuant to this Agreement or otherwise to the Client except for liability for Losses (excluding special or consequential damages) determined by final judgment (not subject to further appeal) to have resulted primarily and directly from the willful malfeasance or gross negligence of such Indemnified Party.

(d) <u>Right to Retain Counsel</u>. An Indemnified Party shall have the right to retain separate legal counsel of its own choice to conduct the representation and all related matters in connection with any such litigation, proceeding or other action. The Client shall pay the reasonable fees and expenses of such counsel and such counsel shall to the fullest extent consistent with its professional responsibilities cooperate with the Client and any legal counsel designated by the Client.

8. MISCELLANEOUS. This Agreement and the Related Agreements (if any) constitute the sole agreements between the parties relating to the services described above and supersede all prior oral and written agreements and representations. This Agreement and the Related Agreements (if any): (i) may not be modified except in writing signed by the parties; (ii) shall be governed by and construed in accordance with the laws of the Commonwealth of PA (unless otherwise expressly provided); and (iii) shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. If any portion of this Agreement or any Related Agreement is deemed to be unenforceable, the balance shall nevertheless continue in effect and any court may enforce any provision to the extent permitted by law, even though the entire provision may not be enforced. This Agreement may be executed in any number of counterparts and by any combination of the parties hereto in separate counterparts, each of which counterparts shall be an original and all of which taken together shall constitute one and the same agreement.

9. TERM OF ENGAGEMENT. Advisor's engagement hereunder may be terminated by either party at any time, with or without cause, upon written notice to the other party, without liability or continuing obligation except for the following (each of which shall survive termination of such engagement for a term not to exceed 10 years or such shorter period as may be specified): (i) payment by the Client to Advisor of fees and expenses incurred through the date of such termination, (ii) the continuing obligations of the Client under Sections 4, 6 and 7 hereof and (iii) the continuing obligations of Advisor and the Client in the Related Agreements (if any) if and to the extent therein explicitly provided to survive termination.

4



IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the dates written below:

| | |
|---|---|
| **Lawrence Frank, Trustee** <br> **Autohaus Acquisition, Inc.** | A. GIBBS & ASSOCIATES, P.C. |
| BY: */s/ L. Frank* | BY: */s/ Andrew S. Gibbs* |
| PRINT: _____ | PRINT:   Andrew S. Gibbs |
| TITLE: _____ | TITLE:   PRESIDENT |
| DATE: _____ | DATE: _____ |



# *Exhibit A*

## Scope of Work

This will confirm that you have engaged us to consult with you in connection with potential insurance claims involving Autohaus Acquisition, Inc., Universal Underwriters Insurance Company and Zurich Insurance.

The terms of the engagement are as follows:

1. Although the specific scope of our services may be modified or refined during the course of the proceedings, you generally intend to seek our analysis and advice regarding actions or purported acts involving any claims under insurance policies available to the debtor, Autohaus Acquisition, Inc., including but not limited to: employee dishonesty, forgery, theft and embezzlement claims available for recourse.

2. All work under this engagement, including any reports, data, notes, work papers, correspondence or other documents we may generate or receive are to be considered confidential work product. All such documents and any information they contain that is not publicly available data may be used only for purposes of this engagement and may not be disclosed to anyone without our written consent in advance. In fact, the very existence of our engagement must be kept confidential and may not be disclosed by you without our written consent. Additionally, in order to review various documents and other materials produced in this action, it may be necessary for you to sign an Affidavit confirming your authorization of our firm to proceed in this matter.

3. In recognition of the confidential nature of this engagement, you agree not to discuss our work with anyone else and to notify us promptly if you receive; (a) Any request to reveal information related to the engagement or to examine, inspect or copy any documents we generate or receive; or (b) Any actual or attempted service of a subpoena, summons or order purporting to require the disclosure of any such information or documents.

4. It is understood that until this matter is resolved (including any appeals), you will not retain or request anyone else regarding the subject matter of this engagement without our written consent in advance.

5. We will be working under the exclusive direction of Lawrence Frank, Trustee.

6. Our initial analysis shall be provided in the form of a draft written report to the Trustee, and shall identify documents, exhibits and factual data and the related insurance coverage, policies and provisions available for recovery. Our fee for this engagement largely depends on the current condition of the books and records of the debtor. Our engagement is also dependent on the assistance of the Trustee and Nicholas J. Reinhart to locate various documents. Our fee is contingent upon the condition of the books and records and availability of documents reviewed by us under our prior engagement letter dated September 29, 2009. Our initial engagement will not include correspondence with the insurance companies, interaction with professionals or claims adjusters retained or employed by the insurance companies nor any expert testimony all of which will be billed hourly.

7. In the event client requests services that are beyond the scope of this engagement, Advisor will notify Client in writing that a separate engagement letter is required and prepare such engagement letter.



IN WITNESS WHEREOF, this Exhibit A to the Engagement Agreement has been executed for and on behalf of the undersigned as of April 26, 2011.

**CLIENT**

AUTOHAUS ACQUISITION, INC.

By: _____

Name:
Title:

Advisor

A. GIBBS & ASSOCIATES, P.C.

_____

By: Andrew S. Gibbs

Name:
Title:

Please acknowledge that you accept these terms by signing the enclosed copy of this agreement above and returning it to us.